# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KIRK SZOPINSKI,

                      Plaintiff,

v.

BRIAN FOSTER, JENNIFER H.
KACYON, THOMAS NELSON,
MICHAEL CLARK, and JOHN DOE,

                      Defendants.

Case No. 18-CV-436-JPS

**ORDER**

        Plaintiff, who is incarcerated at Waupun Correctional Institution, filed a *pro se* complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. (Docket #1). Plaintiff then filed an amended complaint, which differs from the original complaint only in that it is typed, as opposed to handwritten, and supplies additional minor factual details. (Docket #4). The amended complaint supersedes the original complaint and is the governing pleading in this case. *See Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999). Plaintiff has paid the filing fee in full.

        The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Gladney v. Pendelton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327; *Gladney*, 302 F.3d at 774. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003) (citations omitted); *accord Paul v. Marberry*, 658 F.3d 702, 705 (7th Cir. 2011).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see Christopher v. Buss*, 384 F.3d 879, 881 (7th Cir. 2004). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to

relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted); *Christopher*, 384 F.3d at 881.

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the Court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The Court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff alleges that on August 25, 2017, he ingested a "pen tip." (Docket #4 at 2). He was taken to Waupun Memorial Hospital to receive treatment and was then returned to the prison where he was placed on a "dry cell" restriction, meaning all water to his cell was turned off. *Id.* Jennifer Kacyon ("Kacyon"), a nurse, gave the directive to Thomas Nelson ("Nelson"), a lieutenant, to place Plaintiff on dry cell. *Id.*[1] Nelson then

---

[1] It is not clear from Plaintiff's allegations whether it was Kacyon or some other medical staff member who actually entered the "dry cell" order.

informed Brian Foster ("Foster"), the warden, and the officer in the control bubble, who is not named, that all of Plaintiff's water was to be kept off. *Id.*

At about 5 p.m. that evening, Plaintiff activated his emergency call button and told defendant John Doe ("Doe") that he wanted water to drink. *Id.* Doe responded that Nelson had instructed him not to turn on Plaintiff's drinking water or flush Plaintiff's toilet because Plaintiff was on a medical dry cell restriction. *Id.* Plaintiff threated to smash his head against the wall if he did not receive drinking water. *Id.* at 3. Doe refused to turn Plaintiff's water on. *Id.*

A half hour later, Plaintiff told Michael Clark ("Clark"), a correctional officer, that he wanted water to drink. *Id.* Clark told Plaintiff he could not give him water because Kacyon and a supervisor had instructed him not to do so. *Id.* Plaintiff warned Clark that he would smash his head against the wall if he did not receive water or speak to a supervisor. *Id.* When he didn't receive any water, Plaintiff made good on that threat by smashing his own head open. *Id.* at 3–4.

At about 6:35 p.m., Captain Theander retrieved Plaintiff from his cell and took him to get medical care for his head wound. *Id.* at 4. Plaintiff was treated by Kacyon. *Id.* Plaintiff told Kacyon that he did not believe the Health Services Unit ("HSU") could order that his drinking water be turned off. *Id.* Kacyon responded by stating that a medical order was in place requiring that Plaintiff's water be shut off. *Id.* Plaintiff alleges no such order was in place. *Id.*

Plaintiff then told his advanced care provider, Nathan Tapio ("Tapio"), that Kacyon had his drinking water turned off. *Id.* Tapio told Plaintiff it was wrong for Kacyon to do that because failing to drink water would cause constipation that could prevent the pen tip from passing. *Id.*

Plaintiff then told Theander and Kacyon that it was against the law to turn an inmate's water off to prevent him from drinking. *Id.* Theander told Plaintiff there was nothing he could do because Kacyon told him there was a medical order in place stating Plaintiff could not drink water. *Id.*

Kacyon then sent Plaintiff to the hospital for treatment of his head wound, though once he arrived there, a doctor determined his wound could not be sutured. *Id.* at 4–5. Plaintiff was returned to the prison around 9 p.m. that evening. *Id.* His water remained off. *Id.* at 5.

Over the course of the next two days, August 26 and 27, 2017, Plaintiff asked Captain Larson, Lieutenant Immafall, Correctional Officer Stephenson, and Correctional Officer Gorman for water to drink. *Id.* Those men would not give Plaintiff water because HSU had put Plaintiff on a dry cell restriction. *Id.* Sergeant Wolf also did not give Plaintiff any water, but Plaintiff did not ask Wolf for water. *Id.*

On August 28, 2017, Plaintiff was moved to a different cell but his water was not turned on. *Id.* at 6. Around 11 a.m. that day, Plaintiff repeatedly kicked his cell's door until Captain Tritt ("Tritt") arrived. *Id.* Tritt told Plaintiff he would turn on Plaintiff's hot and cold water because it should never have been turned off; Plaintiff should only have been prevented from flushing his toilet. *Id.*

From about 1 p.m. on August 25, 2017 until about 11 a.m. on August 28, 2017, Plaintiff had no drinking water, was never offered a meal tray, and could not flush his toilet. *Id.* at 5–6.

On these allegations, Plaintiff seeks to bring claims against all defendants (Foster, Kacyon, Nelson, Clark, and John Doe) under the Eighth Amendment and a claim against Kacyon for medical malpractice. *Id.* at 6–8.

Plaintiff's allegations are sufficient to state an Eighth Amendment conditions-of-confinement claim against Kacyon. The Eighth Amendment protects inmates from prison conditions that constitute "the unnecessary and wanton infliction of pain." *Hudson v. McMillian,* 501 U.S. 1, 5 (1992). This includes confinement under humane conditions that provide for inmates' basic human needs. *See Childress v. Walker,* 787 F.3d 433, 438–39 (7th Cir. 2015). A prison official who exhibits deliberate indifference to conditions of confinement that deprive an inmate of "the minimal civilized measure of life's necessities" violates the Eighth Amendment. *Farmer v. Brennan,* 511 U.S. 825, 834 (1970).

A conditions-of-confinement claim has both objective and subjective components. *See Estate of Miller, ex rel. Bertram v. Tobiasz,* 680 F.3d 984, 989 (7th Cir. 2012). The plaintiff must plausibly allege that 1) his confinement conditions were objectively serious as to deprive him of "the minimal civilized measure of life's necessities;" and 2) the defendants' acts or omissions in response to those conditions coincided with "a sufficiently culpable state of mind." *See Wilson v. Seiter,* 501 U.S. 294, 297, 304 (1991); *see also Townsend v. Cooper,* 759 F.3d 678, 687 (7th Cir. 2014).

As to the objective element, ordinary discomfort does not implicate the Eighth Amendment; hardship is "part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981) (citation omitted). The court must scrutinize prison conditions in the context of the "evolving standards of decency that mark the progress of a maturing society." *Id.* at 346.

As to the subjective element, an inmate must allege that prison officials were involved in creating a problematic prison condition or were aware of a problematic condition and did nothing to abate it. *See Townsend,*

759 F.3d at 687 (inmate must demonstrate that the defendants acted with knowledge that he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it); *see also White v. Monohan,* 326 Fed. App'x 385, 388 (7th Cir. 2010) (allegation that defendants were "aware of the conditions" and "did 'nothing' to address [them] except make them worse" stated a claim).

Although "[n]othing in the Constitution requires that each prisoner be provided with clean, cold, warm, or any other form of running water in his cell," *Jelinek v. Roth,* No. 93–3316, 1994 WL 447266, at *2 (7th Cir. Aug. 19, 1994), courts in the Seventh Circuit have held that lack of adequate drinking water can amount to an objectively serious condition of confinement. *See, e.g., Davis v. Biller,* No. 00-CV-50261, 2003 WL 22764872, at *2 (N.D. Ill. Nov. 18, 2003) (holding inmates have a basic right to adequate drinking water). A lack of drinking water that endures for an extended period may, therefore, implicate the Eighth Amendment. *Compare Tesch v. Cnty. of Green Lake,* 157 F.3d 465, 476 (7th Cir. 1998) (a disabled inmate's allegation that he was denied assistance in "obtaining drinking water" for "less than two full days" was *de minimis* and did not state a claim for relief) *with Jones v. Dart,* No. 14-CV-3208, 2015 WL 500532 at *5 (N.D. Ill. Feb. 4, 2015) (inmate's allegation that "he was confined for 34 days to a cell that had a sink without running water" stated a plausible conditions-of-confinement claim) *and with Hoffman v. Hertz,* No. 15-CV-00289, 2015 WL 2407274, at *1–2 (N.D. Ill. May 19, 2015) (a detainee's allegations that jail officers denied him "drinking water" and "running water" in his cell for three days were "enough to put forth sufficiently serious conditions, at least for purposes of initial review").

In this case, Plaintiff's allegations that he was deprived of drinking water and meals for three days satisfies the objective prong of a conditions-of-confinement claim for the purposes of screening. As to the subjective element, Plaintiff has sufficiently alleged that Kacyon was involved in creating the problematic prison condition; she allegedly caused Plaintiff's dry cell restriction to be entered. However, Plaintiff has not plausibly alleged that defendants Foster, Nelson, Clark, and John Doe were deliberately indifferent to his lack of drinking water. They knew that Plaintiff was without drinking water, but because of Plaintiff's medical dry cell restriction, they believed they could not give him any. Non-medical prison officials "are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care[.]" *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008). Plaintiff's claims against Foster, Nelson, Clark, and John Doe are, therefore, defeated by his allegations that they relied on the HSU's medical order in deciding not to provide him water. Those defendants will be dismissed.

Plaintiff may also proceed on his supplemental state law medical malpractice claim against Kacyon. Federal courts may exercise supplemental jurisdiction over a state law claim that is "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). In this case, Plaintiff's medical malpractice claim against Kacyon is part of the same case or controversy as his federal claim. To prevail ultimately on a claim for medical malpractice in Wisconsin, Plaintiff will have to prove that Kacyon breached her duty of care and that Plaintiff suffered injury as a result. *Paul v. Skemp,* 2001 WI 42, ¶ 17, 242 Wis.2d 507, 520, 625 N.W.2d 860, 865 (2001). Plaintiff alleges that

Kacyon committed medical malpractice by treating his ingested pen tip issue by ordering his drinking water turned off. At this stage, it is possible to infer that Kacyon's treatment plan may have been negligent.

Thus, for the reasons stated above, Plaintiff shall be permitted to proceed against Kacyon on claims of (1) deliberate indifference to his conditions of confinement, in violation of the Eighth Amendment, and (2) medical malpractice, in violation of Wisconsin state law. 28 U.S.C. § 1915A(b).

Accordingly,

**IT IS ORDERED** that defendants Brian Foster, Thomas Nelson, Michael Clark, and John Doe be and the same are hereby **DISMISSED**;

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Plaintiff's Amended Complaint and this Order are being electronically sent today to the Wisconsin Department of Justice for service on Defendant Jennifer H. Kacyon;

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Defendant shall file a responsive pleading to the Amended Complaint within sixty (60) days of receiving electronic notice of this Order;

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Plaintiff is confined;

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, Plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 5th day of July, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge