# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KIRK SZOPINSKI,

                      Plaintiff,

v.

THOMAS NELSON, CRAIG THEANDER, and PATRICK GORMAN,

                      Defendants.

Case No. 18-CV-436-JPS

**ORDER**

## 1. INTRODUCTION

Plaintiff Kirk Szopinski ("Szopinski"), a prisoner proceeding *pro se,* alleges that the defendants, employees of Waupun Correctional Institution ("WCI"), violated his civil rights by refusing to give him any drinking water for three days while was on a "dry cell" restriction because he had ingested part of a pen. (Docket #19). Szopinski claims the defendants knew he should receive water at regular intervals even when he was on medical dry cell status but deliberately chose not to give him any. The Court permitted Szopinski to proceed against the defendants on an Eighth Amendment conditions-of-confinement claim. (Docket #16).

On June 3, 2019, the defendants filed a motion for summary judgment, along with a brief, proposed facts, and supporting declarations. (Docket #25–#32). Szopinski filed a brief in response to the defendants' motion, a response to their proposed findings of fact, his own proposed findings of fact, and a declaration. (Docket #33–#36). The defendants did not file a reply, and their time to do so has long since passed. They also did not file a response to Szopinski's proposed findings of fact until January 30,

2020, after the Court had alerted defendants' counsel to the same issue in another case. (Docket #41); *see also Shaw v. Edwards et al.*, Case No. 18-CV-140, Docket #52 at 1–3, (E.D. Wis.).

Federal Rule of Civil Procedure 56 and Civil Local Rule 56 describe in detail the form and contents of a proper summary judgment submission. In particular, the rules permit a non-moving party to submit his own "statement . . . of any additional facts that require the denial of summary judgment," Civ. L. R. 56(b)(2)(B)(ii), and they prescribe the procedure for the moving party to reply to those facts, Civ. L. R. 56(b)(3)(B). The local rules also make explicitly clear that the Court "will deem uncontroverted statements of material fact admitted solely for the purpose of deciding summary judgment." Civ. L. R. 56(b)(4); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the court may . . . consider the fact undisputed for purposes of the motion[.]").

There is simply no reason for this Court to excuse the defendants' failure to respond to Szopinski's proposed facts in the time prescribed by the rules. The Court regularly holds *pro se* litigants to this procedural rule, *see Hill v. Thalacker*, 210 F. App'x 513, 515 (7th Cir. 2006) (noting that district courts have discretion to enforce procedural rules against *pro se* litigants), and it will do the same for the represented defendants here. Thus, the Court will deny the defendants' motion for leave to file a tardy response to Szopinski's proposed facts, (Docket #40), and will deem Szopinski's proposed facts, (Docket #35), undisputed for purposes of deciding the defendants' summary judgment motion. *See* Fed. R. Civ. P. 56(e)(2); Civ. L. R. 56(b)(4).

However, even taking Szopinski's proposed facts as true, there is no material fact in dispute that would preclude summary judgment in this case. For the reasons explained below, the defendants are entitled to judgment in their favor.[1]

## 2. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most

---

[1] On May 6, 2019, before the defendants filed their summary judgment motion in this case, Szopinski filed a motion to compel discovery responses from the defendants. (Docket #24). In it, Szopinski explains that the defendants produced admissions and documents in response to Szopinski's discovery requests, but they did not provide interrogatory responses. Defense counsel had written to Szopinski on April 5, noting that those responses were "forthcoming," and reminding Szopinski that he had just accepted service on behalf of the defendants a month earlier. (Docket #24-1). Szopinski's motion to compel does not describe his outstanding interrogatories with any particularity, and he did not include a copy of the interrogatories. Therefore, Szopinski did not equip the Court will sufficient information to decide whether the evidence Szopinski sought was relevant to this litigation and warranted an order compelling production. Szopinski's motion to compel will therefore be denied. The Court further notes that Szopinski made no mention in his summary judgment materials of evidence that he wanted to collect but couldn't because of the defendants' failure to respond to his interrogatories; it appears the defendants either completed their production as promised or Szopinski did not believe the missing evidence was worth mentioning in response to summary judgment.

favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

3. **RELEVANT FACTS**

The following facts are taken from Szopinski's proposed facts, (Docket #35), which the Court deems undisputed, as well as the defendants' proposed facts, (Docket #28), subject to Szopinski's disputes of the same, (Docket #33), and the parties' declarations, (Docket #29–#32 and #36). At all times relevant to this lawsuit, Szopinski was an inmate at WCI and the defendants were employees of WCI. Thomas Nelson ("Nelson") was a lieutenant, Craig Theander ("Theander") was a captain, and Patrick Gorman ("Gorman") was a correctional officer.

On August 25, 2017, Szopinski ingested a piece of a pen in an attempt to harm himself. He was taken to Waupun Memorial Hospital to receive treatment and was then returned to the prison. Consistent with the hospital's discharge orders, Nurse Jennifer Kacyon instructed that Szopinski be placed in the restrictive housing unit on a "dry cell" restriction, meaning all water to his cell was turned off. This was done so that WCI staff could monitor Szopinski's bowel movements and determine if the pen piece passed normally. Prison policy requires that "any inmate confined to a cell or room without water shall be offered liquids (water or milk with meals, etc.) at least every four hours as long as the water supply is turned off." Wisconsin Department of Corrections Division of Adult Institutions Policy #306.00.31(II)(C)(2). Nelson and Theander were the shift supervisors on August 25, and Gorman was not working. Nelson submitted an incident report for supervisor review that day, stating that Szopinski was placed on dry cell status by direction of the Health Services Unit ("HSU"). Szopinski refused his morning and noon meals that day.

At 6:15 p.m. that evening, Szopinski banged his head against the wall repeatedly because, he says, he was being denied drinking water. He was moved to a holding cell before being taken offsite to Waupun Memorial Hospital for treatment. Szopinski returned to the institution between 8:45 p.m. and 9:00 p.m. and was placed back on observation status. Szopinski complains that Nelson was at his cell five times throughout the night but did not offer him water; it is undisputed that this was during third shift, when inmates are asleep. There is no record of Szopinski asking for water that night.

On August 26, Szopinski refused his morning and noon meals.[2] The nutritional log book does not indicate whether Szopinski refused his evening meal. On August 27, Szopinski refused all three meals he was offered. The defendants claim that officer Zackary Keske ("Keske"), who is not a defendant, offered Szopinski water with his lunch tray at 10:30 a.m. and Szopinski refused. Szopinski disputes this, averring that Keske did not interact with him that day. An incident report authored by Keske supports the defendants' story, but as Szopinski notes, the report appears to have been written several months after the incident. (Docket #29-1 at 7–8). The defendants also claim that at 10:45 a.m. on August 27, officer Wolf ("Wolf"), who is not a defendant, offered Szopinski water. An observation log entry supports this. (Docket #29-2 at 15). Plaintiff claims that Wolf did not offer him water on August 27.

---

[2]The defendants state that in addition to three meals per day, Szopinski would have been offered water four times a day along with his medications. Szopinski avers that he did not take his medications during the relevant timeframe, and the record does not indicate whether or not this is true. The Court will accept Szopinski's version of this fact.

Gorman's shift on August 27 was the first time he encountered an inmate on dry cell status. He was responsible for the observation checks of Szopinski from 2:00 p.m. until 8:30 p.m. that day. At the 3:45 p.m. check, Szopinski was standing at his cell door asking for water. He also had his in-cell camera covered. Gorman was instructed to make uncovering the camera a priority before giving Szopinski water. Prison records do not indicate when Szopinski's camera was ultimately uncovered. The defendants then claim that at 5:20 p.m., the water was turned on in Szopinski's cell for fifteen minutes. An observation log entry supports this. (Docket #30-2 at 4). Szopinski says he was not told that the water was on at that time, so he did not drink. The observation log also indicates that Szopinski asked Gorman for a cup of water at 7:45 p.m.; Szopinski says Gorman refused to give him any, either because of the dry cell restriction, *see* (Docket #28 at 12–13), or because Szopinski's in-cell camera was still covered, *see* (Docket #35 at 1).

On the morning of August 28, Szopinski was offered a breakfast tray and milk and he refused both. He was removed from observation status at 9:00 a.m. and his drinking water was turned on at 10:00 a.m. He saw an HSU nurse at 12:40 p.m. for evaluation because of his hunger strike. He drank a bottle of Gatorade in the exam room but refused other offerings.

4. **ANALYSIS**

The Eighth Amendment protects inmates from prison conditions that constitute "the unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 501 U.S. 1, 5 (1992). This includes confinement under humane conditions that provide for inmates' basic human needs. *See Childress v. Walker*, 787 F.3d 433, 438–39 (7th Cir. 2015). A prison official who exhibits deliberate indifference to conditions of confinement that deprive an inmate

of "the minimal civilized measure of life's necessities" violates the Eighth Amendment. *Farmer v. Brennan,* 511 U.S. 825, 834 (1970).

A conditions-of-confinement claim has both objective and subjective components. *See Estate of Miller, ex rel. Bertram v. Tobiasz,* 680 F.3d 984, 989 (7th Cir. 2012). The plaintiff must show that 1) his confinement conditions deprived him of "the minimal civilized measure of life's necessities;" and 2) the defendants' acts or omissions in response to those conditions coincided with "a sufficiently culpable state of mind." *See Wilson v. Seiter,* 501 U.S. 294, 297, 304 (1991); *see also Townsend v. Cooper,* 759 F.3d 678, 687 (7th Cir. 2014). As to the objective element, ordinary discomfort does not implicate the Eighth Amendment; hardship is "part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981) (citation omitted). The court must scrutinize prison conditions in the context of the "evolving standards of decency that mark the progress of a maturing society." *Id.* at 346. As to the subjective element, an inmate must allege that defendant prison officials were involved in creating a problematic prison condition or were aware of a problematic condition and did nothing to abate it. *See Townsend,* 759 F.3d at 687 (inmate must demonstrate that the defendants acted with knowledge that he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it).

Although "[n]othing in the Constitution requires that each prisoner be provided with clean, cold, warm, or any other form of running water in his cell," *Jelinek v. Roth,* No. 93–3316, 1994 WL 447266, at *2 (7th Cir. Aug. 19, 1994), courts in the Seventh Circuit have held that lack of adequate drinking water can amount to an objectively serious condition of confinement. *See, e.g., Davis v. Biller,* No. 00-CV-50261, 2003 WL 22764872,

at *2 (N.D. Ill. Nov. 18, 2003) (holding inmates have a basic right to adequate drinking water). A total lack of drinking water that endures for an extended period may, therefore, implicate the Eighth Amendment. *See Hoffman v. Hertz,* No. 15-CV-00289, 2015 WL 2407274, at *1–2 (N.D. Ill. May 19, 2015) (a detainee's allegations that jail officers denied him "drinking water" and "running water" in his cell for three days were "enough to put forth sufficiently serious conditions, at least for purposes of initial review").

However, a lack of running water in an inmate's cell is not a constitutional violation where the inmate has other access to drinking water. *See Muhammad v. Wilson,* No. 05 C 743, 2006 WL 2413710, at *2–3 (N.D. Ill. Aug. 16, 2006) (where plumbing was broken for seven days but plaintiff was given three meals a day, including beverages with each meal, the challenged condition "was an inconvenience" and "did not amount to a constitutional violation"); *cf. Ramirez v. Beatty,* No. 93–2306, 1994 WL 75897, at *3 (7th Cir. March 8, 1994) (holding an inmate's complaint that he was "housed in a cell without running water" did not state an objectively serious deprivation because he "had access to other cells which contained working plumbing").

In this case, Szopinski has not put forward evidence to show that the conditions of his confinement from August 25 to August 28, 2017 deprived him of the minimal civilized measure of life's necessities. Specifically, the defendants did not deprive him of water for three days as he alleged. Even taking Szopinski's proposed facts as true and construing the other evidence in his favor, the evidence shows that Szopinski was offered meal trays, including milk or water, at least twice on August 25 and 26, three times on August 27, and in the morning on August 28 before the water in his cell was turned on. Szopinski's proposed facts and declaration are bare of any claim

that he was not offered meal trays during this time, and he admits that the nutritional log book shows that refused the meals offered to him.

Szopinski's primary argument is that the defendants did not properly document their meal offerings, and his refusal of them, because the observation log book (as opposed to the nutritional log book) does not include information about meal offerings. Szopinski filed a grievance to this effect, and it was affirmed, not because Szopinski presented evidence that he was denied meals, but because prison policy requires a certain amount of documentation that was not thoroughly completed. (Docket #33-1 at 42). This case is not about the defendants' failure to fill out observation logs in compliance with prison policy; it is about whether they denied Szopinski any water for three days.

Similarly, this case also does not turn on whether the defendants complied with DAI #306.00.31(II)(C)(2), which requires that inmates whose water supply is turned off be offered liquids at least every four hours. Violation of that rule does not necessarily amount to a constitutional violation. The Eighth Amendment requires more. Only a deprivation that is sufficiently serious to deprive an inmate the minimal civilized measure of life's necessities violates the Eighth Amendment. As explained above, a total lack of drinking water that endures for an extended period may implicate the Eighth Amendment, *see Hoffman*, No. 15-CV-00289, 2015 WL 2407274, at *1–2, but being offered water or milk only two or three times a day for three days does not.

Szopinski cannot expect to refuse the meals offered to him and then successfully sue the defendants for not giving him liquids often enough. If Szopinski was "deprived" of liquids in August 2017, it was due to his own stubbornness. Although being offered liquids only twice or three times per

day may not be comfortable, it is not sufficiently serious to satisfy the first element of an Eighth Amendment conditions-of-confinement claim.

Further, even if Szopinski had presented evidence to create a jury question on the first element of his claim, he would fail on the second. That is to say, no reasonable jury could find that the defendants were deliberately indifferent Szopinski's professed lack of drinking water. *See Townsend*, 759 F.3d at 687 (inmate must demonstrate that the defendants acted with knowledge that he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it).

Nelson and Theander were involved in the alleged deprivation only in that they were the shift supervisors on duty at the time and were able to observe Szopinski while he was on dry cell status. Nelson received instruction from the HSU to place Szopinski on dry cell status, and he complied. Both Nelson and Theander could, and did, rely on other officers, whose job it was to deliver meals, to provide Szopinski the option to have liquids with his meals. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job."). Gorman's involvement was limited to his refusal to give Szopinski water while Szopinski had his in-cell camera covered. This was eminently reasonable given Szopinski's disobedience of officers' instructions, but more importantly, it is not evidence of Gorman's deliberate indifference to Szopinski's alleged lack of water. As with Nelson and Theander, there is no evidence that Gorman knew Szopinski was not being offered meals, which include liquid, and failed to intervene to ensure he was provided adequate sustenance.

Szopinski has not created a jury question on either the objective or subjective elements of his Eighth Amendment claim. *See Springer v.*

*Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) ("[S]ummary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.") (quotation and internal marks omitted). His claim cannot proceed to trial.

5. **CONCLUSION**

On the undisputed facts in the record, summary judgment is appropriate in favor of the defendants.[3] The Court must, therefore, grant the defendants' motion and dismiss this action with prejudice.

Accordingly,

**IT IS ORDERED** that the Plaintiff's motion to compel (Docket #24) be and the same is hereby **DENIED;**

**IT IS FURTHER ORDERED** that the Defendants' motion for leave to file a late response to Plaintiff's proposed findings of fact (Docket #40) be and the same is hereby **DENIED**;

**IT IS FURTHR ORDERED** that the Defendants' motion for summary judgment (Docket #25) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

---

[3]Because the Court finds summary judgment is appropriate on the merits on Szopinski's claims, the Court does not reach the defendants' request for application of the doctrine of qualified immunity.

Dated at Milwaukee, Wisconsin, this 13th day of March, 2020.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge